### DAVE HARDING V. STATE OF NEBRASKA.

FILED JUNE 18, 1902. No. 12,248.

Commissioner's opinion, Department No. 1.

1. **Selling Liquor:** GRAVAMEN. The selling of liquor without license forbidden by section 11, chapter 50, Compiled Statutes, is the transfer and disposal of the liquor itself.

2. **Venue:** LOCUS DELICTI. The place of such sale is that where the control of the liquor involved actually passes from the seller to the buyer.

3. ――――: ――――: TITLE: CONSIGNMENT TO COMMON CARRIER. That the articles were paid for and were to be shipped with freight prepaid, and were guaranteed to be according to sample, does not take them out of the general rule that the title to goods ordered from a distant point passes to the purchaser when they are consigned to him and delivered to a common carrier.

ERROR from the district court for Dawson county. Tried below before SULLIVAN, J. *Reversed.*

*Charles S. Elgutter* and *John H. Linderman,* for plaintiff in error.

*Frank N. Prout, Attorney General,* and *Norris Brown,* for the state.

HASTINGS, C.

Defendant in this action was convicted before the police judge of Lexington, Nebraska, on three counts for selling liquor without a license. He appealed to the district court and was again convicted, on one count, for the sale of a gallon of whiskey to one George W. Miller. Defendant is a traveling salesman of S. Goldstrom, who does business in South Omaha under the name of Kentucky Liquor Company. He took the order for the whiskey in question on the 4th of May, received $6 for it, guaranteed that it should come up to the sample shown, and agreed that the purchaser might ship it back and claim his money if it was not true to the sample; sent the order to his employer at South Omaha, who received it, packed the liquor and delivered it to the Union Pacific Railway Company, at South Omaha, consigned to George W. Miller, Lexington, Nebraska, freight prepaid. It arrived at Lexington on the 6th, and on the same day the defendant was arrested on a complaint charging him with selling this liquor; selling to two other parties, and giving away some. On the 7th the liquor was delivered by the railway company to Miller. No authority on the part of defendant to do anything more than to take orders and receive money on them and transmit them and the cash to his employer, is shown. It is claimed that this amounted to a sale at Lexington, and a violation of the liquor laws of the state of Nebraska on the part of defendant. The case seems to turn upon whether or not the title and control of the property passed to Miller in Lexington or in South Omaha. Some attempt is made to claim that the selling forbidden by section 11, chapter 50, Compiled Statutes, is the making of a valid contract for sale. It seems more likely that the compiler who has headed that section "Disposing Without License" has the correct view of its meaning. The sale contemplated by that section is not the entering into a valid contract, but the transfer and disposal of the liquor itself. The place, then, where the title to, and the control of, this

gallon of whiskey passed to George W. Miller is the place
where this gallon of whiskey was sold, within the meaning
of the statute mentioned.  We have examined this record
in vain for any stipulation that Miller was to have this
liquor delivered to him in Lexington.  It is equally im-
possible to find in it any authority or claim of authority
on defendant's part to do more than take the order and
the cash and transmit them.  The only agreement men-
tioned by any of the witnesses is that it should be shipped
strictly according to sample shown, with freight prepaid
from South Omaha, and it was paid for.  Counsel for the
state do not dispute the general rule that delivery by the
seller to a common carrier of property consigned to the
buyer is a transfer of title, and that thereafter it is owned
by the purchaser subject only to the seller's right of stop-
page in transitu.  Of course, in this instance, the price
having been paid in advance, there was no right of stop-
page in transitu.  It seems clear, then, that a perfect title
to this gallon of whiskey passed to the purchaser as soon
as it was packed and sent to the carrier, and certainly as
soon as the bill of lading, naming the purchaser as con-
signee, was made out and delivered by the carrier to the
seller.

It is claimed, however, on the part of the state, that the
fact that the freight was to be paid by the seller and that
the agreement was to ship it to him at Lexington, makes
Lexington the place of delivery, and that therefore the
title did not pass until it reached Lexington.  Doubtless,
by a special contract, the seller could have made Lexington
the place of delivery, and reserved the title and ownership
of the property until it reached there.  But the mere
agreement, where a payment for the goods is received in
advance, to prepay freight, so that the entire transaction
between the parties is ended on the delivery to the car-
rier, would certainly seem to have no such effect.  "Where
the vendor is bound to send the goods to the purchaser, the
rule is well established, as shown *ante*, p. 155, that delivery
to a common carrier, *a fortiori*, to one specially designated

by the purchaser, is a delivery to the purchaser himself;
the carrier being, in contemplation of law in such cases,
the bailee of the person to whom, not by whom, the goods
are sent; the latter when employing the carrier being
regarded as the agent of the former for that pur-
pose." Benjamin, Sales [Kerr's ed.], sec. 925, Ben-
nett's ed., sec. 693. Surely, merely promising to pay
the freight in advance, where he himself has been paid in
full, could not operate by itself to charge the shipper with
any additional risk, or give him any additional authority
or power over this liquor. We are constrained to think
that no sale in Lexington in the sense forbidden by section
11, chapter 50, Compiled Statutes, is shown by the evi-
dence in this case.

It is claimed that the agreement that the goods might
be shipped back if not in accordance with sample renders
the sale so far conditional that it could not be held to have
been completed until the arrival of the goods in Lexing-
ton. This seems to have been the view taken by the trial
court. It would not seem that the making of this stipula-
tion alters in any degree the nature of the transaction
or the relations of the parties to it. It would be the right
of the purchaser in any event to reject any of the goods
which did not agree with the sample. Such goods would
not be, in fact, the ones purchased, but would be something
else. The condition of this stipulation can not be held to
alter in any degree the effect of the delivery to the common
carrier on the part of the seller.

It is recommended that the judgment of the district
court be reversed.

DAY and KIRKPATRICK, CC., concur.

By the Court: For the reasons given in the foregoing
opinion, the judgment of the district court is

REVERSED.